The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie Dollar. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the elimination of the original findings of fact 13, modification of the original findings of fact 14, 15 and the addition of the new finding of fact 17. The conclusions of law 4 and 5 have been modified. Award 2, 3 and 4 have also been modified.
The Full Commission finds as fact and concludes as matters of law the following; which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Worker's Compensation Act, and the employer-employee relationship existed between the parties on March 22, 1993, the date of the alleged injury.
2. The Defendant is a duly qualified self-insured.
3. Plaintiff's average weekly wage was $320.81, which yields a weekly compensation rate of $213.89.
4. Sixty-three (63) pages of medical records and thirty-seven (37) pages of miscellaneous documents are stipulated into evidence by the parties.
5. The issues for determination are:
a. Whether Plaintiff sustained a compensable hernia on March 22, 1993, and if so, to what benefits is he entitled?
b. Whether Plaintiff sustained a compensable back injury on March 22, 1993, and if so, to what benefits is he entitled?
* * * * * * * * * * *
The Full Commission modifies in part and adopts in part the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of hearing, Plaintiff was a 61 year old male with a third grade education who could not read nor write.
2. Plaintiff began working for Defendant in 1961. Plaintiff left for 7 years, returning to work for Defendant in 1977, and he remained employed by Defendant until September 10, 1993.
3. On March 22, 1993, Plaintiff's job was to feed the picker. His duties consisted of using a tow motor to move 400 to 500 pounds bales of cotton fiber to a machine called a picker and then to feed the fiber into this machine. The picker machine processed the fiber and dispensed it through a chute into bags which hung from the top of this chute. These bags held approximately 15 to 20 pounds of processed cotton fiber.
4. On March 22, 1993, Helen Pope, Plaintiff's supervisor, instructed Plaintiff and Mark Lewis, a co-worker, to move a bale of cotton fiber to the picker machine manually, as no tow motor was available at the time. While rolling a bale of cotton, Plaintiff suddenly felt a burning pain from his stomach to his back. Plaintiff immediately told Mark Lewis and another co-worker, Mary Steffey, about this pain. Plaintiff also reported to Patsy Wilson, R.N., the Cone Mills plant nurse, complaining of lower abdominal pain.
5. On March 25, 1993, Dr. Tommie L. Canipe, M.D., F.A.C.S., a general surgeon, examined Plaintiff. Plaintiff complained of lower abdominal pain near the crest of the iliac (hip) bone and across the entire lower abdomen, but Dr. Canipe found no evidence of a hernia at that time.
6. Plaintiff continued to work full-time for Defendant through March 29, 1993.
7. On March 30, 1993, Plaintiff returned to Dr. Canipe's office for a follow-up visit and was examined by Dr. Canipe's associate, Dr. Catherine A. Share, M.D., F.A.C.S. Dr. Share diagnosed Plaintiff as having an indirect right inguinal hernia, and on April 2, 1993, Dr. Canipe performed a surgical hernia repair. Dr. Canipe kept Plaintiff out of work from March 30, 1993 until May 18, 1993, at which time he released Plaintiff to return to work with a 30 pound lifting restriction.
8. Plaintiff first complained of back pain to Dr. Canipe during a follow-up visit on April 28, 1993. Dr. Canipe referred Plaintiff to a neurosurgeon, Dr. Michael B. Hussey, M.D.
9. Dr. Hussey first examined Plaintiff on May 24, 1993. Dr. Hussey diagnosed Plaintiff's back pain as resulting from a herniated disc (nucleus pulposus) on the right at L5-S1. On June 2, 1993, Dr. Hussey performed a partial hemilaminectomy, L5-S1 right, with removal of the ruptured disc.
10. Dr. Hussey ordered Plaintiff to remain out of work on May 25, 1993. Dr. Hussey kept Plaintiff out of work until August 23, 1993, at which time Plaintiff reached maximum medical improvement, and Dr. Hussey released Plaintiff to return to work without restrictions.
11. Plaintiff returned to work on August 24, 1993 and worked until September 10, 1993. On September 13, 1993, Plaintiff informed Patsy Wilson that he had hurt his back on September 10th lifting the 30 pound bags of processed cotton fiber and would not return to work until he saw Dr. Hussey.
12. On September 14, 1993, Dr. Hussey examined Plaintiff. Plaintiff told Dr. Hussey that he could not lift anything over 10 pounds, but Dr. Hussey did not agree. Dr. Hussey placed Plaintiff on a lifting restriction of 40 pounds and told Plaintiff to return to work. Plaintiff never did return to work; instead, he informed Patsy Wilson that he would retire.
13. Dr. Hussey continued to treat Plaintiff throughout the remainder of 1994 and 1995. Dr. Hussey did relate Plaintiff's herniated disc to the specific traumatic incident of March 22, 1993 in which Plaintiff moved a bale of cotton and also sustained a compensable hernia injury.
14. Plaintiff has proved by the greater weight of the credible medical evidence of record that the specific traumatic incident of March 22, 1993 in which Plaintiff sustained a compensable hernia injury was also the cause-in-fact of his herniated disc at L-5, S-1.
15. In April 1993, Plaintiff filed for disability benefits with Defendant. Linda Norman, the insurance coordinator for Defendant, helped Plaintiff complete the forms. She had known Plaintiff for a long time and knew that he did not read or write. The claim was considered under the group medical plan and denied under worker's compensation. Defendant paid short-term disability benefits for a number of weeks while Plaintiff was out of work due to surgery for the compensable hernia injury. However, no specific evidence was offered as to the amount of disability benefits paid to Plaintiff.
16. On March 22, 1993, Plaintiff sustained a compensable hernia as a result of a specific traumatic incident of the work assigned, which immediately followed the incident, and which appeared suddenly. No evidence was presented that Plaintiff had this condition prior to the incident.
17. On March 22, 1993, plaintiff sustained a compensable back injury as a result of a specific traumatic incident of the work assigned. The incident caused plaintiff to be out of work from May 25, 1993 to August 23, 1993.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. In order for a hernia or rupture to be compensable, it must be proven that: (a) there was an injury resulting in a hernia or rupture; (b) the hernia or rupture appeared suddenly; (c) the hernia or rupture immediately followed an accident. A hernia shall be compensable if it arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned; and (d) the hernia or rupture did not exist prior to the accident (or incident). N.C. GEN. STAT. § 97-2(18).
2. The N.C. Court of Appeals has held that "the use of the term hernia in conjunction with the word rupture in the statute, `hernia or rupture', seems to indicate that something less than full extension through the organ wall is contemplated. In Moorev. Engineering Sales Co., 214 N.C. 424, 199 S.E. 605 (1938), the Court indicated that "a hernia begins with the abdominal wall weakening and ends with protrusion." Pernell v. PiedmontCircuits, 104 N.C. App. 289, 409 S.E.2d 618 (1991), cert. denied,300 N.C. 613, 412 S.E.2d 87 (1992). In this case, Plaintiff suddenly felt a burning pain from his stomach to his back while moving a bale of cotton on March 22, 1993. Although no protrusion was diagnosed until March 30, 1993, Plaintiff continued to complain of pain and sought medical attention from Dr. Hussey on March 25, 1993.
3. As a result of the compensable hernia, Plaintiff is entitled to temporary total compensation at the rate of $213.89 per week for the period of time from March 30, 1993 through May 18, 1993. Defendant is entitled to a credit for short-term disability benefits paid to Plaintiff during this time period. N.C. GEN. STAT. §§ 97-29, 97-42.
4. Plaintiff has proved by competent medical evidence that his back condition was causally related to the March 22, 1993 incident in which he sustained a hernia. Therefore, Plaintiff is entitled to temporary total disability benefits from May 25, 1993 to August 23, 1993 at a rate of $213.89 per week.
5. Plaintiff is entitled to have Defendant pay for all medical expenses incurred as a result of the compensable hernia and back injury on March 22, 1993. N.C. GEN. STAT. §§ 97-2(19),97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendant shall pay Plaintiff temporary total disability compensation for the hernia injury at the rate of $213.89 per week for the period of time from March 30, 1993 through May 18, 1993, less the credit for short-term disability benefits which Plaintiff received through the employer-funded plan. The sum has accrued and shall be paid in a lump sum.
2. Defendant shall pay plaintiff temporary total disability compensation for his back injury at a rate of $213.89 per week for the period of May 25, 1993 to August 23, 1993. The sum has accrued and shall be paid in a lump sum.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded in paragraph two is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel.
4. Defendant shall pay medical expenses incurred by Plaintiff as a result of the hernia and back injury sustained on March 22, 1993.
5. Defendant shall pay the costs, including the following expert witness fees:
a. $230.00 to Michael B. Hussey, M.D., and
b. $200.00 to Tommie L. Canipe, M.D.
 S/ ______________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/rst 2/17/97